IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **NAKIA MUIRHEAD** | § | |
| | § | |
| **V.** | § | **CIVIL  ACTION  NO.  4:25-CV-1222-P** |
| | § | |
| **STRIDE, INC.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING
DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE**

Pending before the Court is Defendant Stride Inc. ("Stride")'s Motion to Compel Arbitration and Stay Case ("Motion to Compel Arbitration") [doc. 22], filed April 9, 2026.  Having carefully considered the motion, response, and reply, the Court **RECOMMENDS** that Defendant's Motion to Compel Arbitration be **GRANTED** and the case be **STAYED** pending arbitration.

## I.    RELEVANT BACKGROUND

On July 22, 2022, Stride offered *pro se* Plaintiff Nakia Muirhead ("Muirhead") "a position of employment as a Senior Manager of State Compensatory Education."  (Defendant's Motion to Compel Arbitration ("Def.'s Mot. to Compel") at 2; *see* Plaintiff's Complaint ("Pl.'s Compl.") at 2.)  Muirhead was employed by Stride from August 8, 2022, to "on or about August 7, 2023." (Def.'s Mot. to Compel at 2-3; *see* Pl.'s Compl. at 2-4.)  On July 25, 2022, Muirhead signed, *inter alia*, an employment offer letter and Stride's "Agreement to Arbitrate."  (Def.'s Mot. to Compel at 2; *see* Defendant's Appendix to Motion to Compel Arbitration and Stay Case ("Def.'s App.") at 2-3,[1] 5-6, 8-10.)  Such agreement, as relevant here, states:

---

[1] When citing to Defendant's Appendix, the Court is referencing the page numbers as listed by Defendant on the bottom right-hand corner of the Appendix.

**1.    Agreement to Arbitrate**

Stride Inc. and Employee agree to submit to confidential, final, and binding arbitration any dispute, claim or controversy that may arise between them arising from or relating to Employee's employment or the termination of Employee's employment, including but not limited to claims arising from contract, tort, public policy, constitution, statute or ordinance, or involving the interpretation of this Agreement or any policy or practice of Stride Inc. For example, and not for purposes of limitation, the parties agree to arbitrate all tort claims of any nature whether negligent or intentional; constitutional claims including privacy; claims under federal, state, county or municipal statute or ordinance, including any state anti- discrimination statute, Title VII of the Civil Rights Act of 1964 as amended, the Age Discrimination in Employment Act of 1967 as amended, the Americans with Disabilities Act, the Employee Retirement Income Security Act, federal and state family and medical leave laws, and any other law or regulation relating to employment, employment discrimination, employee wages, or benefits, except as provided in paragraph 2 below.

**2.    Claims Excluded from the Agreement**

The parties desire to specifically exclude from arbitration claims for workers' compensation or unemployment compensation benefits, and any claims or petitions for extraordinary relief (such as injunction, attachment, or immediate possession) that Stride Inc. or Employee may bring arising from the obligations contained in the Confidentiality, Proprietary Rights, and Non-Solicitation Agreement. To the extent that Stride seeks only damages in a claim arising out of an alleged violation of the Confidentiality, Proprietary Rights, and Non- Solicitation Agreement, that claim is not excluded but falls within the scope of this Agreement to Arbitrate.

. . . .

**9.    Arbitration as Exclusive Means for Resolution**

In exchange for the parties' mutual agreement to submit claims to the arbitration process, and to preserve the expeditious and inexpensive nature of arbitration which is of value to the parties, the parties agree that arbitration will be the sole and exclusive means for resolution of all disputes as described in paragraph 1 of this Agreement. The parties understand that there is no right to a jury in an arbitration proceeding, and thus expressly waive the right to a jury trial of any claim within the scope of this agreement.

. . . .

**13.    Governing Law**

The parties agree that all controversies or claims arising out of or relating to this arbitration procedure, its interpretation, performance or breach, including without limitation the validity, scope, and enforceability of this Agreement, will be governed by the Federal Arbitration Act, 9 U.S.C. Section 1, et seq., or if inapplicable, the Virginia Arbitration Act, Va. Code §8.01- 577 et seq., or any

successor or replacement statutes. However, nothing in this Agreement will limit the right of either party to bring a motion or petition in either federal or state court to compel arbitration pursuant to the terms of this Agreement, or to have judgment entered on any award or determination of an arbitrator resulting from an arbitration conducted pursuant to this Agreement. The employment relationship and this Agreement will be governed, construed, and enforced in accordance with the laws of the Commonwealth of Virginia.

(Appendix to Defendant's Motion to Compel Arbitration and Stay Case ("Def.'s App.") at 8-10.)

Plaintiff filed this suit against Defendant on October 29, 2025, claiming, *inter alia*, that Defendant accessed her personal information before, during, and after her employment by using Plaintiff's personal email address with Plaintiff's consent but without informing Plaintiff that Defendant would access her personal data. (Pl.'s Compl. at 3.) In her Complaint [doc. 1], Plaintiff alleges twenty-three claims against Defendant. (*Id.* at 4-7.)

In its Motion to Compel Arbitration, Stride argues, *inter alia*, that the Court should enforce the Agreement to Arbitrate by compelling arbitration and staying the lawsuit pending the conclusion of the arbitration process. (Def.'s Mot. to Compel at 11.) In her response, Muirhead asserts that the Court should deny Defendant's motion "because Defendant has not carried its threshold burden under the Federal Arbitration Act." (Plaintiff's Response and Brief in Opposition to Defendant's Motion to Compel Arbitration and Stay Case ("Pl.'s Resp.") at 1.) In support, Muirhead claims, *inter alia*, that "[t]his is not an ordinary employment dispute" as she "alleges whistleblower retaliation, ADA/FMLA/ERISA interference, privacy invasion, unauthorized personal-account and device control, and continuing post-termination electronically stored information ('ESI') conduct." (*Id*. at 2.) Muirhead "further contends that the alleged account and device control began before her active employment began, continued after she was terminated, and continued after she demanded preservation and demanded that access cease." (*Id*.) Plaintiff also claims that "Defendant has not proven compliance with the agreement's own prerequisites" or

"how its April 9, 2026 motion complies" with the 12-month time limit for invoking arbitration" set forth in the Agreement to Arbitrate. (Pl.'s Resp. at 2-3.) She also claims that there was no contract formation because there is no evidence the Defendant signed the Agreement to Arbitrate. (*See generally* Pl.'s Resp.)

## II. LEGAL ANALYSIS

"The [Federal Arbitration Act ("FAA")] reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). As such, the FAA provides, *inter alia*, that arbitration provisions in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a party is permitted "to file a motion to compel arbitration based on 'the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration.'" *Engebretson v. Randolph-Brooks Fed. Credit Union*, No. 1:23-CV-1002-RP, 2024 WL 2871317, at *1 (W.D. Tex. May 21, 2024) (quoting FAA, 9 U.S.C. § 4). The FAA has been interpreted to establish a presumption in favor of arbitration. *See Sullivan v. Feldman*, 132 F.4th 315, 327 (5th Cir. 2025) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.") (internal quotation marks and citations omitted ) (alterations in original). This presumption is reflected in the very terms of the FAA, which "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C §§ 3, 4) (emphasis in original).

The Fifth Circuit has set forth "a two-step analysis for adjudicating a motion to compel arbitration." *Herod v. DMS Sols. Inc.*, No. 4:23-cv-04465, 2024 WL 4881439, at *3 (S.D. Tex.

Nov. 25, 2024); *see Will-Drill Res., Inc. v. Samson Res, Co.*, 352 F.3d 211, 214 (5th Cir. 2003). In the first-step of the analysis, "a court must determine whether the parties agreed to arbitrate the dispute." *Will-Drill Res., Inc.*, 352 F.3d at 214. This first step is broken down into two inquiries: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (internal quotations marks and citations omitted). "Beyond this analysis, the courts generally do not delve further into the substance of the parties' dispute." *Dealer Comput. Servs., Inc., v. Old Colony Motors, Inc.*, 588 F.3d 884, 886-87 (5th Cir. 2009). In the second-step of the analysis, "a court must determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Long v. Manhattan Nursing and Rehab. Ctr., Inc.*, No. 3:21-cv-00090-TSL-RPM, 2021 WL 1269900, at *1 (S.D. Miss. Apr. 6, 2021) (internal quotation marks and citations omitted); *see Dealer Comput. Servs., Inc.*, 588 F.3d at 886 ("Courts perform a two[-]step inquiry to determine whether to compel a party to arbitrate: first whether parties agreed to arbitrate and, second, whether federal or state policy renders the claims nonarbitrable.").

While a party seeking to compel arbitration bears the initial burden of demonstrating that a valid arbitration agreement in fact exists, the burden shifts to the nonmovant in the face of a valid agreement "to establish a defense to enforcement (e.g., unconscionability, duress, fraudulent inducement, revocation)." *Rodgers-Glass v. Conroe Hosp. Corp.*, No. H-14-3300, 2015 WL 4190598, at *8 (S.D. Tex. July 10, 2015); *see Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (noting that "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity"). "If the nonmovant fails to meet this burden, the trial court must compel arbitration." *Rodgers-Glass*, 2015 WL 4190598, at *8. "Courts often allow affidavits and declarations to authenticate contracts used to evince an agreement to arbitrate."

*Edwards v. Experian Info. Sols.*, No. DR-24-CV-00021-AM-MHW, 2024 WL 4328773, at *2 (W.D. Tex. Aug. 1, 2024).

As set forth above, the first step in evaluating Defendant's Motion to Compel is for the Court to determine whether the parties agreed to arbitrate the dispute, which involves two separate inquiries. *See Will-Drill Res., Inc.*, 352 F.3d at 214. The first inquiry in this step is whether the parties entered into a valid arbitration agreement. *Id.* "To determine if a valid and enforceable contract exists, courts apply ordinary state law principles that govern the formation of contracts." *Long*, 2021 WL 1269900, at *1 (citing *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263-64 (5th Cir. 2004)). In this case, the Agreement to Arbitrate provides that it is subject to Virginia law. (*See* Def.'s App. at 10; Def.'s Mot. to Compel at 5-8.) "Virginia law requires 'the standard elements of offer, acceptance, and consideration for the formation of a valid contact.'" *Kiser v. Truist Fin. Corp.*, 796 F. Supp. 3d 207, 220 (E.D. Va. 2025) (quoting *Hill v. Alstom Power, Inc.*, No. 3:13cv496, 2013 WL 6408416, at *2 (E.D. Va. Dec. 6, 2013)).

In her response, Plaintiff, stating that "[t]his is not a Texas-versus-Virginia issue," argues, *inter alia*, that the Agreement to Arbitrate is not valid because Defendant did not sign such agreement; thus there was no contract formation as there was no acceptance. (Pl.'s Resp. at 9, 12.) To determine whether a party assented to the terms of a contract, Virginia courts look to that party's words or actions. *See, e.g.*, *Klein v. Verizon Comm'ns*, No. 1:12-cv-00757 (GBL/IDD), 2017 WL 5071306, at *4 ("It is well settled that manifesting acceptance by engaging in activity explicitly recognized as such in the governing contract provisions is sufficient to demonstrate assent under Virginia Law."); *see Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va. 2007) ("We ascertain whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind."). "Under Virginia law, a written contract signed by only one party

may be binding and enforceable even without the other party's signature, if the other party assented to the agreement." *S. Elec. Servs., Inc. v. Cornerstone Det. Prods., Inc.*, No. 7:10CV00076, 2010 WL 2233664, at *5 (W.D. Va. June 3, 2010); *see Errands Plus, Inc. v. Signature Flight Support, LLC*, No. 3:25-cv-00098, 2026 WL 734070, at *7 (W.D. Va. Mar. 16, 2026).

In this case, the Agreement to Arbitrate clearly shows that it was received by and, subsequently, signed by Plaintiff on July 25, 2022, demonstrating Plaintiff's acceptance of the contract. (*See* Def.'s App. at 10.) While Defendant does not appear to have subsequently countersigned such agreement, the evidence presented[2] indicates that Defendant intended to be bound and assented to the Agreement to Arbitrate as Defendant employed Plaintiff for a year.[3] (*See* Defendant's Reply in Support of Motion to Compel Arbitration and Stay Case ("Def.'s Reply") at 3.)

Plaintiff also argues that she should not be compelled to arbitrate because Defendant did not comply with several other provisions in the Agreement to Arbitrate, including the Pre-Arbitration Conflict Resolution provision[4] and the Time Limits for Invoking Arbitration provision[5] in the Agreement to Arbitrate. (*See generally* Pl.'s Resp.) While Plaintiff "contends

---

[2] Such evidence also includes Stride expressly telling Muirhead in its employment offer letter dated July 22, 2022, that Muirhead's "employment [was] contingent upon the execution of the enclosed . . . Agreement to Arbitrate . . . on or before the Start Date." (Def.'s App. at 6; *see* Def.'s App. at 2-3.) Muirhead signed the employment offer letter (as well as the Agreement to Arbitrate) on July 25, 2022. (Def.'s App. at 6.) In addition, Muirhead fully enjoyed all of the benefits of employment pursuant to her employment offer letter as she was continuously employed by Stride from August 8, 2022, until August 7, 2023. (Def.'s App. at 3.)

[3] *See Neil v. Wells Fargo Bank, N.A.*, 596 F. App'x 194, 196-97 & n.4 (4th Cir. 2014) (stating that, while the bank did not countersign the loan modification application submitted by the mortgagors, "countersigning is merely a formality, which is not necessary under Virginia contract law" as long as there is some evidence of acceptance).

[4] The Pre-Arbitration Conflict Resolution provision states: "Before arbitrating any claim between them, the parties agree to attempt in good faith to resolve any dispute covered by or relating to this Agreement according to the Conflict Resolution policy set forth by the Company." (Def.'s App. at 8.)

[5] The Time Limits for Invoking Arbitration provision states: "If the claim cannot be resolved through the Informal Conflict Resolution procedure, either party wishing to invoke the arbitration under this Agreement must do so within 12 months of when the cause of action arose, or within the time period provided under law for commencement of an action in a court of law, whichever expires earlier." (Def.'s App. at 8.)

she acted in good faith before litigation and before this motion," Plaintiff does not attach any evidence in support of such contention.[6]   Moreover, procedural issues such as pre-arbitration conflict resolution and the period in which the Agreement to Arbitrate applies are regularly held as issues to be determined by the arbitrator.  *See Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 306 (5th Cir. 2021) ("We have said that where the existence of the contract is not in question, the court must examine whether the allegations made by the party resisting arbitration challenge the making of the agreement to arbitrate itself as opposed to allegations regarding the contract as a whole.") (internal quotation marks and citations omitted); *Gen. Warehousemen & Helpers Union Local 767 v. Albertson's Distrib., Inc.*, 331 F.3d 485, 488 (5th Cir. 2003) ("For questions of so-called procedural arbitrability, the arbitrator, not the court, generally decides whether the parties complied with the agreement's procedural rules.") (internal quotation marks and citations omitted).[7] In other words, Plaintiff's arguments are insufficient to show that Plaintiff did not validly, voluntarily, and with informed consent enter into and execute the Agreement to Arbitrate.  Thus, as the parties entered into a valid arbitration agreement, the next inquiry is whether the particular claims asserted by Plaintiff in this lawsuit against Defendant fall within the scope of the Agreement to Arbitrate.  *See  Will-Drill Res., Inc.*, 352 F.3d at 214.

As set forth above, Plaintiff, in her Complaint, alleges multiple claims against the Defendant for actions related to or arising from her employment with Stride.  (*See* Pl.'s Compl. at 4-7.)  As to scope, the Agreement to Arbitrate specifically states: "Stride Inc. and Employee agree

---

[6] The Court notes that Plaintiff, in her Response, cites to an Appendix.  However, Plaintiff failed to file any Appendix with her Response.

[7] *See also Armont v. K12 (Florida Cyber Charter Academy-FLCCA)*, No. 3:19-cv-334-J-34MCR, 2019 WL 7666549, at 11 (M.D. Fl. Dec. 26, 2019), *rep. and rec. adopted*, 2020 WL 376957 (M.D. Fl. Jan. 23, 2020) ("To the extent Plaintiff raises Defendant's purported failure to comply with the terms of the Agreement as rendering the Agreement unenforceable, the undersigned finds that such arguments are to be addressed in arbitration.")

to submit to confidential, final, and binding arbitration any dispute, claim or controversy that may arise between them arising from or relating to Employee's employment or the termination of Employee's employment . . . ." (*See* Def.'s App. at 8.)  While Plaintiff presents a number of arguments regarding why the claims she is asserting against Defendant do not fall within the scope of the Arbitration Agreement, it is clear that all of Plaintiff's claims are connected to one or more of the following time periods: (1) the time Plaintiff was initially offered a job and/or was asked to provide her email and other personal information to Defendant; (2) the time Plaintiff was employed; or (3) the time after Plaintiff was terminated.  Because the Agreement to Arbitrate contains a very broad arbitration clause, all of Plaintiff's claims, even the ones that arose before or after Plaintiff's employment officially began or ended, "touch" matters covered by the expansive arbitration language in the Agreement to Arbitrate.  *See Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F. 3d 1061, 1068 (5th Cir. 1998); *see also Robertson v. Intratek Computer, Inc.*, 976 F.3d 575, 583 & n.2 (5th Cir. 2020).  Consequently, the Court **FINDS and CONCLUDES** under the first-step of the analysis that the parties agreed to arbitrate the dispute.

Thus, the final issue is, under the second-step of the analysis, whether federal or state policy renders the claim the claims non-arbitrable.  *See Dealer Comput. Servs., Inc.*, 588 F.3d at 886.  As Plaintiff does not raise any arguments as to this issue, the Court **FINDS and CONCLUDES** that there are no federal or state policy that renders Plaintiff's claims non-arbitrable.

Defendant, in its Motion to Compel Arbitration asks this Court to stay this action pending arbitration.  (Def.'s Mot. to Compel at 11.)  The Court notes that, in applying the FAA, "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does *not* have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."  *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024)

(emphasis added).  Consequently, the Court **FINDS and CONCLUDES** that Defendant's Motion to Compel Arbitration should be **GRANTED** and this case should be **STAYED** while the arbitration proceedings are pending.

## RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** that Defendant's Motion to Compel Arbitration and Stay [doc. 22] be **GRANTED** and the case be **STAYED and ADMINISTRATIVELY CLOSED** pending the completion of the arbitration proceedings.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **June 9, 2026**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further **ORDERED** that if objections are filed, and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered cause previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May 26, 2026.

 

 

_____

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

11